Danielle R. Bettencourt, *pro hac vice pending*
FAIRFIELD AND WOODS P.C.
1801 California Street, Suite 2600
Denver, Colorado 80202
(303) 894-4431
dbettencourt@fwlaw.com

**LANG & KLAIN, P.C.**
6730 N. SCOTTSDALE RD., SUITE 101
SCOTTSDALE, ARIZONA 85253
TELEPHONE (480) 534-4900
*Please e-serve filings on:*
*Filing@lang-klain.com*

WILLIAM G. KLAIN, #015851
wklain@lang-klain.com *(not for e-service)*
ERIKA L. JOHNSEN, #034954
ejohnsen@lang-klain.com *(not for e-service)*

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Silkie Perkins, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT**<br>**(PETITION FOR REVIEW)** |
| U.S. Department of Agriculture; Thomas Vilsack, Secretary of the U.S. Department of Agriculture; U.S. Forest Service; Randy Moore, Chief of the U.S. Forest Service, | |
| Defendants. | |

## INTRODUCTION

1.     Plaintiff Silkie Perkins ("Ms. Perkins") asks this Court to find the United States Forest Service's ("USFS") decision to cancel Ms. Perkins' Term Grazing Permit ("Permit") was arbitrary, capricious, and not in accordance with federal law. Ms. Perkins obtained her Permit in 2016, allowing her to graze land on property known as the Antelope Hills Allotment located in the Chino Valley Ranger District of the Prescott National Forest. In August 2022, Ms. Sarah Clawson, the District Ranger for the Bradshaw and Chino Valley Ranger Districts of the Prescott

National Forest, arbitrarily cancelled Ms. Perkins' Permit based on the unsupported allegations of unauthorized grazing on the Jerome Allotment and the Perkinsville and Horseshoe Allotments in 2021. Mr. Clawson's decision was not supported by any evidence of Ms. Perkins' cattle grazing in these allotments, let alone evidence of willful conduct by Ms. Perkins. Instead, the cancellation decision was unreasonably based upon the alleged actions of an individual previously temporarily associated with Ms. Perkins' Permit, who was not associated with or in any way operating under Ms. Perkins' Permit at the time of the alleged unauthorized grazing, and speculation.

2.      Accordingly, the February 21, 2023 Appeal Deciding Officer decision and the final April 11, 2023 discretionary review decision affirming the cancellation of Ms. Perkins' Permit were arbitrary and capricious. The USFS failed to consider known contradictory evidence, failed to acknowledge the lack of evidence that Ms. Perkins' cattle were involved in any unauthorized grazing, and arbitrarily and capriciously assigned fault to Ms. Perkins for the presumed actions of another operator's cattle that were neither owned nor controlled by Ms. Perkins, nor otherwise associated with Ms. Perkins' Permit at the time of the alleged unauthorized grazing. The loss of Ms. Perkins' Permit will adversely impact her entire grazing operations, cause significant costs, and inflict significant damages. For the Complaint, Ms. Perkins hereby alleges as follows:

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. §1331 [federal question] and 28 U.S.C. §1346(a)(2) [when the United States is a defendant], as the claim asserted herein arises under the laws of the United States including the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 558, 702, 706; Title IV of the Federal Land Policy and Management Act (FLPMA), 43 U.S.C. §§ 1751-1753; 36 C.F.R. Part 214; and the Taylor Grazing Act (TGA) 43 U.S.C. § 315b. The discretionary review decision of the USFS is considered final agency action under 36 C.F.R. 214.19(e). The controversy is also ripe, because the actions of the USFS injure the rights of Ms. Perkins under the APA and the FLPMA.

4.      Venue is proper under 28 U.S.C. §1391(e) because the case and controversy pertain to a federal grazing permit for the use of public federal lands located on the Prescott National

02682970.docx.v2-6/1/23

Forest in Arizona. 28 U.S.C. § 82. This case would properly be assigned to the Phoenix Division, because the Defendant United States Forest Service's main office for the Prescott National Forest is located in Chino Valley, Arizona.

## PARTIES

5.     Plaintiff Perkins is an individual residing in Clarkdale, Arizona. Ms. Perkins had a Term Grazing Permit for property located in the Prescott National Forest, which is the subject of this action.

6.     Defendant United States of America owns the lands that are the subject of this case.

7.     Defendant United States Department of Agriculture ("USDA") is the department of the federal government that Congress delegated the authority to manage the national forests and the grasslands in accordance with the Constitution of the United States and federal law.

8.     Defendant Tom Vilsack is sued in his official capacity as Secretary of the USDA.

9.     Defendant United States Forest Service is an agency within the USDA that is charged with the administration and management of the national forests, including the Prescott National Forest, and was the agency responsible for canceling Ms. Perkins' Permit.

10.     Defendant Randy Moore is sued in his official capacity as the Chief of the USFS.

## STATEMENT OF FACTS

11.     Ms. Perkins held the legal right to graze livestock in the Antelope Hills Allotment, a federal grazing allotment in the Prescott National Forest, pursuant to a Term Grazing Permit issued on December 29, 2016, Permit No. 91079. *See* 36 C.F.R. Part 222; 16 U.S.C. § 580l; 43 U.S.C. § 1752. The Permit was for a term of 10 years and subject to renewal. 43 U.S.C. § 1752(a), (c)(1). Ms. Perkins has held a permit on this allotment since 1996, and the allotment and permit has otherwise been under her family name for multiple generations. This is the only federal grazing permit that Ms. Perkins holds.

12.     The Permit authorizes grazing on the Antelope Hills Allotment of between 936 and 1200 cow-calf animal months grazed each year for a variable season. The periods of use and non-use, and pastures to be grazed within the allotment are determined each year in the Annual

02682970.docx.v2-6/1/23

Operating Instructions ("AOI") and consistent with the Allotment Management Plan ("AMP").

13.     Only livestock owned by the permit holder are allowed to graze on National Forest System lands under grazing permits. Forest Service Handbook 2209.13, Ch. 10, Section 12.22 (Aug. 3, 1992). However, the USFS's policy is to allow "[p]ermit holders . . . up to 50 percent of the livestock permitted to be owned by their children if they are establishing a livestock herd of their own with the intent of acquiring the ranch operation." Forest Service Handbook 2209.13, Ch. 10, Section 12.22 (Aug. 3, 1992). The permit holder must advise the District Ranger annually of the livestock to be grazed under this exception and it "does not qualify family members to hold a term grazing permit." *Id.*

14.     Ms. Perkins' 2021 AOI allowed for a short two-month grazing period for 100 cattle on the Packard Pasture in the Antelope Hills Allotment from March 1, 2021 to April 30, 2021. Ms. Perkins' Permit was under a previous suspension of 25 percent of the term grazing permit privilege for the 2021 and 2022 grazing years due to past noncompliance with the pasture rotation under the 2019 AOI, livestock watering out of the Verde River within the Antelope Hills Allotment, and range improvement maintenance demands.

15.     Of the total 100 cattle allowed to graze, 40 cattle owned by Ms. Perkins' son, Mr. Jerry Vojnic, were authorized by the USFS to graze under Ms. Perkins' Permit for the two-month 2021 grazing season. Mr. Vojnic's brand was added to the Permit for the sole purpose of identifying cattle that were authorized to graze on the Antelope Hills Allotment.

16.     Mr. Vojnic has no management authority or control over Ms. Perkins' cattle, her cattle operations, or her Permit. Mr. Vojnic did help Ms. Perkins move cattle on the Antelope Hills Allotment during the 2021 grazing season and helped with the cattle in 2019 and 2020 when he was similarly allowed to graze some of his cattle under Ms. Perkins' Permit. He also helps Ms. Perkins with range improvement maintenance on the Antelope Hills Allotment.

17.     Pursuant to the 2021 AOI, Ms. Perkins' cattle and Mr. Vojnic's cattle grazed on the Packard Pasture in Antelope Hills Allotment starting on March 1, 2021. Ms. Perkins never received any notice of complaints during the two-month grazing season on the Antelope Hills

Allotment for 2021.

18.     In the spring of 2021, Ms. Perkins contacted the Phoenix Cement Plant (the "Plant"), which is located adjacent to the Jerome Allotment, about using the corrals located on the Plant's private property to complete the round-up and removal of cattle from the Antelope Hills Allotment by the off-date of April 30, 2021. The Plant manager approved the request. Mr. Vojnic started to remove cattle from the Antelope Hills Allotment around the last week of April 2021, and had completed removal of both his and Ms. Perkins' cattle from the Allotment to the temporary corrals on the Plant's property by April 28, 2021.

19.     Ms. Perkins' cattle and Mr. Vojnic's cattle were hauled out of the Plant's corrals by the first week of May 2021. Ms. Perkins' cattle were then either sold or split up onto other private property she leases, and then only a few returned to her private property for a brief amount of time.

20.     On April 28, 2021, Ms. Perkins sold 23 head of cattle at the Marana Stockyards. She sent six cow pairs and a bull to Springtime Snowdrift LLC's property on April 28, 2021, and they remained there until December 15, 2021. She also sent about 30 head of cattle to private property owned by JT Cattle Company, LLC in Chandler, Arizona, from May 2021 until about February 2022.

21.     In December of 2021 and February of 2022, Ms. Perkins' cattle were then hauled to private property owned by her father's estate in Chino Valley. Only the six cow pairs and a bull were hauled from the Springtime Snowdrift LLC's property in December to Ms. Perkins' and other family members private property in Perkinsville until being trucked to the property in Chino Valley.

22.     Mr. Vojnic's cattle were returned to him after being removed from the Antelope Hills Allotment and under his complete control. He likely hauled his cattle to other private lands he leased in the area or to Ms. Perkins' private property in Perkinsville where he resides.

*Communications with USFS Regarding Alleged Unauthorized Grazing*

23.     On May 17, 2021, the Range Management Specialist, Mr. John Kava, notified Ms.

- 5 -

Perkins that there was unauthorized livestock on the Antelope Hills Allotment on the Verde River in the area of Cress Spring. The Range Technician reported on the unauthorized grazing and took pictures of the cattle, whom did not have a recognizable brand, let alone Ms. Perkins' brand. The cattle were immediately removed, and Ms. Perkins' repaired the Antelope Hills Allotment south boundary fence. The Antelope Hills Allotment was not stocked at the time and Ms. Perkins' cattle had been hauled out by the April 30th off-date.

24.     On July 2, 2021, Mr. Vojnic's cattle were observed on the Horseshoe Allotment in the Verde River area. The USFS noted the Horseshoe water gap fence was down. Between May 18 and June 14, 2021, Mr. Vojnic's cattle were also recorded on game cameras in the Horseshoe Allotment along the Verde River. Mr. Vojnic was notified and all cattle were removed by July 6, 2021. The USFS contacted the Horseshoe Allotment permittee to fix the water gap fence that was down, but this Horseshoe Allotment improvement fence remained inoperable because it was not maintained, does not keep cattle out, does not run the entire length, and seasonal flooding can knock the fence down.

25.     The game camera also captured another cow belonging to Mr. Vojnic on the Horseshoe Allotment in the Verde River area on July 30, 2021 due to the water gap fence being down.

26.     On November 3, 2021, Mr. Kava observed about 15 head of cattle grazing on Horseshoe Allotment in the Verde River area and the water gap fence was still down. Mr. Kava called and emailed Ms. Perkins and Mr. Vojnic to let them know cattle were on the Verde River and had to be removed by November 8, 2021. The Horseshoe Allotment permittee was notified that the water gap fence was down and it was alleged to have been fixed by November 13, 2021. On appeal, the USFS acknowledged that the water gap fence maintenance was the responsibility of the Horseshoe Allotment permittee. However, the fence continued to be an issue and was never completely functional throughout 2021.

27.     The USFS continued to acknowledge that Mr. Vojnic owned and controlled the cattle straying onto the Horseshoe Allotment. On November 10, 2021, the Deputy District Ranger

sent a letter to Mr. Vojnic notifying him that grazing cattle on National Forest System lands without a permit is in violation of the law and could result in criminal citation and/or administrative penalties. Ms. Perkins never received a similar letter notifying her of this unauthorized grazing.

28.     On December 17, 2021, Mr. Kava's field observations documented utilization of vegetation by potential unauthorized livestock on the Verde River on the Perkinsville Allotment around the Perkinsville Bridge. The USFS had been notified about a potential homeless man and his horses staying in this area during the summer and fall of 2021.

29.     Mr. Kava stated he observed cattle with Mr. Vojnic's brand within the river pasture of the Horseshoe Allotment on December 23, 2021. Mr. Kava emailed Ms. Perkins and Mr. Vojnic on December 23, 2021 about cattle on USFS property and required removal by December 27, 2021. Ms. Perkins asked if the Horseshoe fence had been repaired and told Mr. Kava to call Mr. Vojnic.

30.     Mr. Kava reported on potential evidence of unauthorized grazing on the Jerome Allotment on January 5, 2022. In conversations with a Plant employee, Mr. Dan Zellner, Mr. Kava reported that Mr. Zellner stated that the Plant had issues with cattle frequently in 2021 and he would call Jerry Vojnic. Mr. Kava reported and included photographs of cow pies on the Plant's private property and around the drinker also located on private property. Mr. Kava took photos around the Jerome Allotment, and focused specifically on the area around the Dripping Spring tank where old cow pies were present. The report included no photos of cattle, let alone documentation of a specific brand, grazing within the Jerome Allotment. It also provide no discussion on utilization data.

31.     On January 6, 2022, Mr. Kava texted Ms. Perkins and Mr. Vojnic about unauthorized cattle on the Jerome Allotment and a picture of one cow. The cow had yellow ear-tags, but Ms. Perkins and Mr. Vojnic could not identify the owner from the picture.

*USFS Notice of Non-Compliance*

32.     After Ms. Perkins requested a copy of the Antelope Hills Allotment inspection

report from January 2022, District Ranger Tony Papa stated in an email that he could not set a date to meet and discuss authorization of livestock on the Antelope Hills allotment for the remainder of the 2021 grazing season. Mr. Papa's email included the January readiness inspection report and a letter from October 2021 that listed maintenance projects that must be completed prior to authorization. He also stated:

> In effort to be open with you about the current situation of your permit, I want to advise you that we are investigating Endangered Species Act infractions dealing with livestock associated with Term Grazing Permit 91079, issued to you. . . . In addition there have been several documented incidents of unauthorized grazing and permit actions are forth coming.

Ms. Perkins requested further clarification, but it was not provided. The USFS did not have any additional discussions with Ms. Perkins or offer clarifications about the issues raised by Mr. Papa.

33.     On February 24, 2022, District Ranger Sarah Clawson for the Bradshaw and Chino Valley Ranger Districts of the Prescott National Forest issued a Notice of Non-Compliance with Term Grazing Permit No. 91079 to Ms. Perkins (the "NONC"). The NONC was issued for "several incidents of unauthorized livestock grazing associated with [Ms. Perkins'] permit." The NONC claimed livestock "associated" with Ms. Perkins' term grazing permit were observed inside and outside of the Antelope Hills Allotment, including within the Verde River Corridor of the Horseshoe Allotment, between May 1 and the end of December 2021. The NONC further cited "two incidents of unauthorized grazing in November 2021 on the Perkinsville Allotment" and stated it was investigating reports of unauthorized grazing on the northern portion of the Jerome Allotment "for a prolonged period without authorization in 2021."

34.     The remedy for the NONC was to remove all unauthorized livestock on USFS lands by February 28, 2022 and to prevent their return. However, Ms. Perkins had no cattle on USFS lands since the end of April 2021, let alone at the time of receipt of the NONC. The NONC further stated that to "cure" the noncompliance, Ms. Perkins had to set requirements to prevent any such

- 8 -

unauthorized activity from occurring in the future, and if it were to occur, to take immediate action to address it.

35.     The NONC also required Ms. Perkins to provide by March 4, 2022 a "written account detailing your unauthorized livestock grazing on the Jerome Allotment in 2021", including the reasons for it occurring and the actions Ms. Perkins took to remedy the situation. The NONC further demanded specific reporting requirements for any time Ms. Perkins is aware that her livestock have gained access to the Verde River Corridor. Finally, the NONC reminded Ms. Perkins of maintenance projects for the Antelope Hills Allotment and stated that "[f]ailure to complete these items by February 28, 2022, will be considered noncompliance with the terms and conditions of your term grazing permit."

36.     Ms. Perkins responded to the NONC on March 3, 2022. In her response, Ms. Perkins made it clear that the claims in the NONC were based on cattle that she did own or control. Ms. Perkins' cattle did not conduct any unauthorized grazing on the Jerome Allotment.

37.     Ms. Perkins sent another letter to Ms. Clawson on March 18, 2022 in which she reiterated her position that the USFS claims in the NONC were false because "cattle not belonging to me, not grazing my permit and not under my control" are not her responsibility. She also explained in detail how her improvements listed in the NONC were functional.

38.     Ms. Perkins sent an additional follow-up letter to Ms. Clawson on March 30, 2022 stating that "[a]s of April 30, 2021 the only authorized brand is the IU BAR, belonging to the owner of the Antelope Hills Allotment, Silkie Perkins."

39.     Following issuance of the NONC in February of 2022, Ms. Perkins did not receive any notice from the USFS of her cattle grazing in the Verde River Corridor or within the Jerome Allotment.

*USFS Investigation of Unauthorized Grazing in the Jerome Allotment*

40.     As part of the investigation into the unauthorized grazing on the Jerome Allotment, a Law Enforcement and Investigations officer met with Plant Employee Dan Zellner on April 5, 2022. Mr. Zellner stated that in the summer of 2021 there were numerous cattle in and around the

- 9 -

the Plant's private property, but noted that "[h]e was also never able to directly identify any brands or other notable markings identifying them specifically as anyone's cattle" and never witnessed any cattle "directly on the Antelope or Jerome allotments." Based on his experience with cattle on the Plant property, Mr. Zellner stated someone would call Mr. Vojnic or Ms. Perkins under the "simple assumption the cattle belonged to them." However, Ms. Perkins never received a call from Plant employees in 2021 about cattle on the Plant's property.

41.    Mr. Zellner never "witnessed the round ups to their final location" and only noted that "cowboys would drive them north toward what would be the Jerome and/or Antelope allotments," thus it was "his presumption that each time the cattle were seen on the cement plant property, PERKINS, VOJNIC, and/or their cowboys would drive them back onto the Antelope allotment, close the gate, then leave." Mr. Zellner further stated that cattle would then return to the Plant's property a few days later. But by September of 2021, no cattle returned to the Plant's property.

42.    When Mr. Vojnic or others would round-up cattle or drive them off the Plant's property, they would have to check-in at the Plant's security gate and employees would log them in. The Plant's visitor logs from April to September of 2021 were attached to the District Ranger's Cancellation Decision. Several visitor log entries referenced Ms. Perkins' "handlers", "son", "ranch hand", "employees", or "crew", or Mr. Vojnic. Ms. Perkins does not have any ranch hands or employees, and her son is the only one that helps her on occasion with grazing operations and maintenance of range improvements. The only times the Plant visitor log referenced Ms. Perkins' name alone was on April 29, 2021, which was at the end of the Antelope Hills Allotment grazing season when cattle were hauled out of the Plant's corrals, and a couple times in August of 2021, with one instance stating "Silky checking property." From May 2021 to September 2021, Ms. Perkins never went to the Phoenix Cement Property to remove cattle.

43.    Mr. Gregg St. Clair, Vice President of Cement Operations at the Plant, confirmed that the Visitor Logs from this time do not identify specific Ranch personnel entering the Plant. Ms. Perkins has had multiple years of pass-through access authorization, so the security guards

generally log-in people that have previously been associated with Ms. Perkins under her name or the Ranch's name.

44.     If Mr. Vojnic or Ms. Perkins needed to access the south portion of the Antelope Hills Allotment, they would also have to pass through the Phoenix Cement Plant's Property and the Jerome Allotment and their presence would be noted by employees on the Plant's visitor logs.

*USFS Permit Cancellation Decision*

45.     Despite Ms. Perkins repeated assertions that her cattle were not involved in any unauthorized grazing and without any concrete evidence to the contrary, on August 8, 2022, Mr. Kava emailed Ms. Clawson's Cancellation Decision to cancel Ms. Perkins' Term Grazing Permit No. 91079 (the "Cancellation Decision"). The Cancellation Decision was made pursuant to 36 C.F.R. § 222.4(a)(4) which allows cancellation if the "permittee does not comply with the provisions and requirements in the grazing permit or the regulations of the Secretary of Agriculture on which the permit is based."

46.     The Cancellation Decision alleged that Ms. Perkins "willfully allow[ed] livestock that you own, control, or that are otherwise associated with your term grazing permit to graze on the Jerome Allotment." The Cancellation Decision further stated that information collected during the investigation revealed that Ms. Perkins was "present and personally involved in managing the livestock on the Jerome Allotment, thereby knowingly participating in the unauthorized use of the National Forest."

47.     Ms. Clawson also stated that Ms. Perkins was "personally involved in arranging for the livestock to be kept on the Phoenix Cement Plant property, and that you were identified as the contact person for Cement Plant employees to call when livestock were found wandering outside of their corral." Ms. Clawson concluded that Ms. Perkins "acted willfully to direct or participate in the unauthorized grazing in violation of [her] term grazing permit and USFS regulations, and that [she] knowingly misrepresented [her] involvement …"

48.     The results of the investigation of unauthorized grazing on the Jerome Allotment and related documentation were attached to the Cancellation Decision. Ms. Clawson relied upon

the statement from the Plant employee and the Plant's visitor logs to conclude that Ms. Perkins, Mr. Vojnic, and others acting on Ms. Perkins' behalf had drove cattle from the Plant's property toward the Jerome and/or Antelope Allotments on several occasion between April and September of 2021.

49.    The Cancellation Decision also made general claims that livestock associated with Ms. Perkins' grazing permit were observed "inside and outside of the Antelope Hills Allotment" between May 1 and December 2021, including within the Verde River Corridor.

*Appeal of Cancellation Decision*

50.    On September 22, 2022, Ms. Perkins filed an appeal of the Cancellation Decision. The appeal requested, among other things, mediation pursuant to 7 U.S.C. § 5101(b)(1)(B) and 36 C.F.R. § 214.8(b)(3).  Ms. Perkins' mediation requested was granted, but the parties could not resolve the case during mediation.

51.    On February 21, 2023, an Appeal Deciding Officer Decision ("ADO Decision") affirmed the cancellation of the Permit. The ADO Decision supported its decision by stating that Ms. Perkins' March 3 and March 18, 2022 letters in response to the NONC failed to address the unauthorized grazing described in the NONC. The ADO Decision also stated Ms. Perkins' response to the NONC was deficient because it did not provide information regarding the location of Ms. Perkins' cattle during the relevant time or any evidence that her cattle were not involved in the unauthorized grazing until the appeal stage.

52.    The ADO Decision further stated that Ms. Perkins was aware that cattle carrying brands associated with her Permit were utilizing the Plant throughout the summer and fall of 2021, and were "regularly accessing NFS lands on the Jerome Allotment due to a lack of functional fencing." The ADO Decision states that it believed there was sufficient evidence of unauthorized grazing by cattle belonging to Ms. Perkins "and/or [her] son" and that the livestock owned by Ms. Perkins' son, Mr. Vojnic, were "associated with" Ms. Perkins' permit at the time the unauthorized grazing occurred on the Jerome Allotment between May and December 2021.

53.    On March 20, 2023, a discretionary review officer stated that "due to the serious

- 12 -

nature of a permit cancellation" it was reviewing the February 22, 2023 ADO Decision and that Ms. Perkins was authorized to continue grazing pursuant to the Permit until a final decision was issued.

54. On April 11, 2023, the discretionary review officer affirmed the ADO Decision upholding the Cancellation Decision ("Discretionary Review Decision"). In the Discretionary Review Decision, Deputy Regional Forester Sherri Schwenke "acknowledge[d] there were some gaps in information and some of the evidence was not 100% conclusive," but ultimately found that the evidence presented by the District Ranger was "persuasive." She also found cancellation of the grazing permit was reasonable and warranted.

**FIRST CAUSE OF ACTION**
**(CANCELLATION OF TERM GRAZING PERMIT**
**IS ARBITRARY AND CAPRICIOUS)**

55. Ms. Perkins incorporates herein and realleges each of the foregoing paragraphs 1 through 54.

56. The Administrative Procedure Act ("APA") authorizes judicial review when agencies act contrary to law or without lawful authority, 5 U.S.C. § 706(2)(C), or arbitrarily, capriciously, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A).

57. 36 C.F.R. § 222.4(a)(4) allows permit cancellation if the "permittee does not comply with the provisions and requirements in the grazing permit or the regulations of the Secretary of Agriculture on which the permit is based." Suspension or cancellation of a term grazing permit is warranted when "permittees' livestock" "graze on lands outside the permitted area." Forest Service Manual 2200, Chapter 2230, Section 2231.62c (Sept. 9, 2005).

58. In deciding what action to take on a violation of a grazing permit, the USFS considers various factors including the severity and extent of violation, degree of negative resource effects, failure of the permittee to take corrective action, past noncompliance, and whether the action is willful or not. Region 3 Forest Service Handbook 2209.13, Chapter 10, Section 16.2 (Feb. 23, 2014).

59. Before a permit is suspended or cancelled, the USFS must provide the relevant facts

- 13 -

02682970.docx.v2-6/1/23

that support cancellation and provide the permittee the opportunity to "demonstrate or achieve compliance with all lawful requirements." 5 U.S.C. § 558(c); *see* Forest Service Manual 2200, Chapter 2230, Section 2231.62 (Sept. 9, 2005).

60.    Pursuant to the Permit terms, Ms. Perkins was prohibited from allowing "*owned or controlled* livestock to be upon any area of Forest Service-administrated lands" not described in the Permit or the annual Bill for Collection. Permit, Part 2, item 8(e) (emphasis added).

61.    The District Ranger's Cancellation Decision dated August 8, 2022, as affirmed on February 22, 2023, and on April 11, 2023, is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law because compliance with the NONC was reached before the NONC was even issued and the information relied upon as set forth in the Cancellation Decision did not constitute sufficient evidence to support the conclusion that Ms. Perkins was responsible for any unauthorized grazing. Specifically, there was no evidence that the cattle involved were in fact owned or controlled by Ms. Perkins, nor was there any evidence of willful conduct by Ms. Perkins to allow unauthorized grazing on federal lands by livestock owned or controlled by Ms. Perkins.

62.    Contrary to the statements in the ADO's Decision, Ms. Perkins adequately responded to the information request in the NONC. Because Ms. Perkins stated that her cattle were not involved in any alleged unauthorized grazing, she had no information or explanation to provide in response to the NONC's request for an explanation as to why her cattle were grazing on NFS land without authorization. Ms. Perkins did not allow her cattle she owned or controlled to graze on the Jerome Allotment in the summer and fall of 2021, nor otherwise participate in allowing unauthorized grazing on this Allotment. Neither the NONC, nor the District Ranger, requested information regarding the location of Ms. Perkins' cattle when not on federal land during the relevant time, thus this information was not provided at that time.

63.    Ms. Perkins fully addressed the maintenance improvement list in the NONC. Ms. Perkins also complied with the cure requirements in the NONC by preventing her cattle from entering USFS land. Before returning to the Antelope Hills Allotment pursuant to the 2022 AOI,

- 14 -

Ms. Perkins' cattle had not grazed on any National Forest System lands since leaving the Antelope Hills Allotment in April of 2021.

64.     The ADO Decision and Discretionary Review Decision fail to support their decision with a reasonable explanation or any evidence, let alone substantial evidence, of any violation by Ms. Perkins and is instead impermissibly based on mere assumptions and speculation. The evidence provided in support of the Cancellation Decision and relied upon in the ADO Decision and Discretionary Review Decision, do not prove that Ms. Perkins' cattle were ever found on the Jerome Allotment or within the Verde River Corridor in the Horseshoe, Perkinsville, or Antelope Hills Allotments. In fact, most of the evidence in the record proves that others were responsible for the alleged trespassing cattle. The USFS has not produced any photos of cattle owned or controlled by Ms. Perkins grazing on the Jerome Allotment. Further, the USFS has not provided any evidence or witness statements that identify a brand associated with cattle that were seen on the Plant's private property.

65.     The ADO Decision and Discretionary Review Decision are also arbitrary, capricious and abuse of discretion because they dismiss and fail to give any weight to Ms. Perkins' evidence contrary to the allegations in the Cancellation Decisions and supporting her position.

66.     Further, the ADO Decision and Discretionary Review Decision arbitrarily and capriciously punish Ms. Perkins for the unauthorized grazing of cattle that she did now own and that were not otherwise under her control. The ADO decision states that the unauthorized grazing was done by cattle belonging to Ms. Perkins "and/or [her] son" and that the livestock owned by Ms. Perkins' son, Mr. Vojnic, were "associated with" Ms. Perkins' permit at the time the unauthorized grazing occurred on the Jerome Allotment. However, as the ADO decision acknowledges, Mr. Vojnic's permission to graze under Ms. Perkins' permit ended on April 30, 2021 and thus Mr. Vojnic's cattle were not "associated" with Ms. Perkins' permit during the time the alleged unauthorized grazing occurred.

67.     The Cancellation Decision was made pursuant to 36 C.F.R. 222.4(a)(4) based on Ms. Perkins' alleged failure to comply with the provisions of the Permit. The Permit only requires

- 15 -

that Ms. Perkins prevent the unauthorized grazing of cattle she owns or controls. Even if Mr. Vojnic's cattle were "associated" with Ms. Perkins during the time of the alleged unauthorized grazing, which they were not, the Permit says nothing of any requirements for cattle "associated" with the Permit. The Permit instead requires cattle "owned or controlled" by Ms. Perkins to be kept off non-permitted Federal lands.

68.     Therefore, USFS's decision to cancel Ms. Perkins' Term Grazing Permit was arbitrary and capricious, and unsupported by the evidence before the agency, and should be withdrawn.

69.     Cancellation of Ms. Perkins' permit has significant consequences on Ms. Perkins' entire cattle operations. Ms. Perkins entire livelihood and support come from the ranch and USFS grazing permit. Since the USFS's final decision, Ms. Perkins has had to sell 50 head of cattle due to the limited amount of private land available for leasing in the area. It is not financially sustainable for Ms. Perkins to continue her ranching operations without a federal grazing permit. The USFS's final decisions has resulted in significant economic harm to Ms. Perkins' operations, the loss of a valuable USFS grazing permit, and thousands of dollars in legal fees and administrative costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Perkins seeks the following relief against the United States:

a.     An order declaring that the USFS's cancellation of Ms. Perkins' term grazing permit was arbitrary, capricious, and in abuse of discretion and that the cancellation of Ms. Perkins' permit must be withdrawn;

b.     A preliminary and/or permanent injunction prohibiting the USFS from enforcing the provisions of the final permit cancellation decision dated April 11, 2023;

c.     Attorney's fees and costs incurred by Ms. Perkins to the extent permitted by law; and

d.     Such other and further relief as may be just and appropriate upon the facts and law at issue herein.

- 16 -

1    DATED this 16th day of June, 2023.

2                                          FAIRFIELD AND WOODS P.C.

3

4                                          By: /s/ Danielle Bettencourt
                                                Danielle R. Bettencourt (*pro hac vice* pending)
5

6                                          LANG & KLAIN, P.C.

7

8                                          By: /s/ William Klain
                                                William G. Klain
9                                               Erika L. Johnsen

10                                              *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        - 17 -
02682970.docx.v2-6/1/23